**CASE NO. 23-1127**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

————————————

ASHLEY BUSH,

*Plaintiff - Appellant,*

v.

FREDERICK COUNTY PUBLIC SCHOOLS,

*Defendant - Appellee.*

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

————————————

**OPENING BRIEF OF APPELLANT**

————————————

Dionna M. Lewis
Jessica M. Ochoa
DISTRICT LEGAL GROUP, PLLC
700 Pennsylvania Avenue, SE
Suite 2098
Washington, DC 20003
202-486-3478
dionna@districtlegalgroup.com
jessicaochoa.esq@gmail.com

*Counsel for Appellant*

<u>**DISCLOSURE STATEMENT**</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1,

Plaintiff-Appellee Ashley Bush makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?

    No.

2.  Does party/amicus have any parent corporations? If yes, identify all parent corporations, including grandparent and great-grandparent corporations.

    No.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? If yes, identify all such owners.

    No.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? If yes, identify entity and nature of interest.

    No.

5.  Is party a trade association? (amici curiae do not complete this question) If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member.

    No.

6.  Does this case arise out of a bankruptcy proceeding? If yes, identify any trustee and the members of any creditors' committee.

    No.

Date: 4/18/23          //s// <u>Dionna Maria Lewis</u>, *Attorney for Ashley Bush*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................2

STATEMENT OF THE CASE ..............................................................3

    I.     Factual Background ...............................................................3

    II.    Procedural History ................................................................6

    III.   Federal Court Proceedings .......................................................7

SUMMARY OF ARGUMENT ..............................................................8

STANDARD OF REVIEW .................................................................9

ARGUMENT ..............................................................................10

    I.     The District Court Abused Its Discretion In Considering Appellee's
         Motion Unopposed .............................................................10

    II.    The District Court's Denial of Consideration of Appellant's
         Opposition Does Not Constitute "Harmless Error" As Appellant
         Provided Sufficient Evidence to Establish That There Were Genuine
         Issues Of Material Fact That Remained ......................................27

CONCLUSION ............................................................................42

REQUEST FOR ORAL ARGUMENT ....................................................43

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ................................45

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................36, 40

*Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*,
    843 F.2d 808 (4th Cir. 1988) ...........................................17, 19, 20

*Burlington Northern & Santa Fe Ry. v. White*,
    548 U.S. 53 (2006)........................................................................42

*Burton v. TJX Cos.*,
    2008 U.S. Dist. LEXIS 35839 (E.D. VA. May 1, 2008)..............18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................28

*Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*,
    616 F.3d 413 (4th Cir. 2010) ...........................................10, 19-20

*Crawford v. Metro. Gov't of Nashville & Davison County*,
    555 U.S. 271 (2009)......................................................................41

*Fort Bend Cty. v. Davis*,
    139 S. Ct. 1843 (2019)..................................................................31

*GNB, Inc. v. Tropex, Inc.*,
    1988 U.S. App. LEXIS 19524 (4th Cir. 1998)......................*passim*

*Jacobs v. N.C. Admin. Office of the Courts*,
    780 F.3d 562 (4th Cir. 2015) .......................................................37

*Kotteakos v. United States*,
    328 U.S. 750 (1946)......................................................................28

*Lolatchy v. Arthur Murray, Inc.*,
    816 F.2d 951(4th Cir. 1987) ................................................*passim*

iii

*Lufti v. United States*,
    527 Fed. Appx. 236 (4th Cir. 2013) ........................................................28, 29

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................................................32, 40

*McDonough Power Equipment, Inc. v. Greenwood*,
    464 U.S. 548 (1984)................................................................................27, 28

*McKesson Medical-Surgical, Inc. v. Flower Orthopedics Corp.*,
    2018 U.S. Dist. LEXIS 26127 (E.D. VA. Feb. 15, 2018) .....................*passim*

*National Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)......................................................................................30

*Park Corp. v. Lexington Ins. Co.*,
    812 F.2d 894 (4th Cir. 1987) .........................................................................8

*Payne ex rel. Estate of Calzada v. Brake*,
    439 F.3d 198 (4th Cir. 2006) .......................................................................10

*Taylor v. Virginia Union Univ.*,
    193 F.3d 219 (4th Cir. 1999) ...................................................................9, 27

*United States v. Moradi*,
    673 F.2d 725 (4th Cir. 1982) ...............................................................*passim*

## CONSTITUTIONAL PROVISIONS AND STATUTES

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

42 U.S.C. § 2000...................................................................................1, 7, 29

42 U.S.C. § 1981 ...........................................................................................7

## STATE PROVISIONS AND STATUTES

Md. Code Ann., Cts. & Jud. Proc. § 10-401 ..............................................7

## RULES AND REGULATIONS

Fed. R. App. P. 28(a) ..........................................................................1

Fed. R. App. P. 28(a)(4) ......................................................................1

Fed. R. Civ. P. 12(b)(6) ..................................................................1, 14

Fed. R. Civ. P. 56(a) ....................................................................28, 37

Fed. R. Civ. P. 60(b) ......................................................................8, 15

## <u>JURISDICTIONAL STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 28(a)(4) and Rule 28(a), Plaintiff-Appellant Ashley Bush ("Ms. Bush" or "Appellant") makes the following statement concerning jurisdiction.

<u>Basis for District Court Jurisdiction</u>.  This case is an action brought to redress race and gender discrimination as well as retaliation by Frederick County Public Schools. ("FCPS" or "Appellee") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq*.  Accordingly, the District Court had subject matter jurisdiction of Appellant's discrimination complaint pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

<u>Basis for Court of Appeals Jurisdiction</u>.  This Court has jurisdiction of the appeal from the final decision of the District Court pursuant to 28 U.S.C. § 1291. The District Court issued a final Order pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing Appellant's case on January 12, 2023.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.    Whether the District Court abused its discretion when it considered Appellee's Motion for Summary Judgment unopposed.

2.    Whether the District Court's abuse of discretion in considering Appellee's Motion for Summary Judgment unopposed and failure to consider Appellant's Opposition to Appellee's Motion for Summary Judgment constituted "harmless error."

## STATEMENT OF THE CASE

**FACTUAL BACKGROUND**

Appellant, Ashley Bush, is an African American female resident of Montgomery County, Maryland, who began working for FCPS in May 2015. JA11, ¶ 7. Appellant was the Head Coach of the Frederick High School Girls Basketball Team and achieved stellar results, including over 120 total wins and three Maryland State Championships. JA11, ¶ 16-7.

Appellant was regularly subjected to discriminatory and racist behavior as a result of Appellee's inability to implement anti-racist policies for their employees and students of color, more specifically African Americans. For example, basketball game fans and attendees would refer to the Appellant and her African American players as "gorillas" and would make monkey gestures toward them. Appellant and her players were regularly subjected to racial slurs and violence. Appellee was aware of this type of behavior occurring at games and took no action to address it, quell it, or alleviate it in order to protect the coaching staff and students' physical and social emotional health which are inclusive of the Appellee's responsibilities. *See generally,* JA10. When Appellant spoke out about FCPS' failure to protect Appellant and her players, she was reprimanded and forced to complete a behavior modification evaluation. JA16, ¶ 26.

Appellant was consistently subjected to disparate treatment regarding the racial violence at various basketball games that other white coaches were not. *See generally,* JA10. Despite this, Appellant continued to speak out against the disparate treatment her athletes faced as well as FCPS' failure to put a stop to the racial violence during basketball games. *See generally,* JA10. On or about April 15, 2019, Appellant was accused of posting a statement on Facebook regarding the selection of two athletes for the Co-Player of the Year award. The Facebook post expressed disappointment over this selection as the Frederick High School player had more impressive statistics and accomplishments. JA20, ¶ 33. Due to the use of the word "I," FCPS ordered Appellant to take down the post despite the fact that it did not violate any school or Facebook policies, was not posted on the official team page, and did not include any threatening or targeting language and the coach of the other Co-Player of the Year had made a similar post. JA20-21, ¶ 34-6. Eventually, the Frederick High School Athletic Director ordered that the post was to be removed by a certain deadline and the post was deleted. *Id.*

On or about June 4, 2019, Appellant was informed that she would be suspended for the first game of the 2019 – 2020 season for insubordination related to the Facebook post even though the post had been removed prior to the deadline. JA21, ¶ 36. In or around February 2020, several of Appellant's players resigned from the team without informing Appellant. JA23, ¶ 41-2. In order to foster team

building and honesty, Appellant held a closed meetings with her players in which she encouraged the players to speak openly and honestly about their feelings and discussed their concerns for how to handle the backlash from the media and community inquiries.  JA23-24, ¶ 43-5.  After the meeting, the team returned to their normal practice schedule.

On or about February 6, 2020, FCPS informed Appellant that she was under investigation for abuse allegations because of the player resignations.  JA24, ¶ 46. Appellant requested if FCPS could disclose the allegations lodged against her, but FCPS declined.  *Id.* On or about February 12, 2020, FCPS informed Appellant that they concluded their investigation and that they had found no substantiation to the abuse allegations. JA25, ¶ 50.  Appellant was concerned about the false allegations and asked FCPS how she would be protected as an FCPS employee.  FCPS responded that Appellant would be protected. *Id.*

On or about February 13, 2020, a false Facebook profile under the alias "Melanie Smith" posted a recording that they purported was recorded during the most recent team meeting held by Appellant. The recording captures an adult woman stating, "fuck white people." JA25, ¶ 51.  The post on the Facebook page implies that the Appellant made this statement. The audio recording was then sent to the FCPS.  While Appellant denied the accusation, FCPS informed her that they

would need to investigate. Appellant respected FCPS' duty to investigate and turned in her keys and badge. JA25-26, ¶ 52.

Since Appellant's advocacy against FCPS failure to protect her athletes from racial violence, Appellant was regularly dismissed or reprimanded whenever she addressed or questioned racially insensitive behavior that occurred on school grounds, while white male employees were taken seriously regarding their complaints. *See generally*, JA10. White coaches and teachers were not investigated or subjected to the same level of scrutiny and punishment as Appellant even when involved in the same or similar incidents. *Id.*

On February 17, 2020, FCPS informed Appellant that she would be terminated from her position as Head Coach and banned from attending any basketball games. JA26, ¶ 54.

Appellant, Ashley Bush, by and through counsel hereby respectfully requests that the Appellee's Motion to Strike Appellant's Opposition to Appellee's Motion for Summary Judgment granted by the Honorable Julie R. Rubin Memorandum Opinion and Order of January 12, 2023, be reversed and remanded.

## PROCEDURAL HISTORY

After her discriminatory termination, Appellant timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission

("EEOC"). The EEOC matter was not resolved through conciliation, and the EEOC issued Appellant his right to file suit in federal court.

**FEDERAL COURT PROCEEDINGS**

On May 14, 2021, Appellant timely filed this action with the United States District Court for the District of Maryland against Appellee, FCPS, alleging employment discrimination on the basis of her race and sex, engagement in protected EEO activity and subjection to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq*., and Section 1981, 42 U.S.C. § 1981, as well as violations of Maryland Wiretapping and Electronic Surveillance Act, Md. Code Ann., Cts. & Jud. Proc. § 10-401 *et seq*., and common law breach of contract, defamation, and wrongful termination.

The Appellee moved for summary judgment on May 12, 2022. JA83. Due to a scheduling error, Appellant's counsel was under the belief that the Opposition was due on June 2, 2022. In reality, Appellant's Opposition had been due on May 26, 2022, but Appellant's counsel was unaware. As a result of incorrect uploading of files, Appellant's Opposition to Appellee's Motion for Summary Judgment was filed on June 3, 2022, and was accompanied by a "Motion for Leave to Refile Appellant's Motion One Day Out of Time, *Nunc Pro Tunc*, to June 2, 2022." JA491, JA757. On June 7, 2022, Appellee moved to strike Appellant's Opposition on the grounds that it was untimely because it had been filed eight (8) days out of

time.  JA762.  The District Court granted the motion to strike on June 29, 2022, and held that it would consider Appellee's Motion for Summary Judgment unopposed.  JA839.  The District Court also awarded Appellee attorney's fees for the motion to strike and oral argument.  *Id.*

On July 14, 2022, Appellant timely moved for Reconsideration of the Court's granting of Appellee's motion to strike.  JA841.  The District Court denied Appellant's Motion for Reconsideration on September 6, 2022.  JA928.

On January 12, 2023, the District Court granted Appellee's motion for summary judgment and the case was closed.  JA954.

Appellant timely filed a Notice of Appeal on February 2, 2023.  JA960.  Appellant seeks *de novo* review of the District Court's ruling that granted Appellee's Motion to Strike Appellant's Opposition to Summary Judgement and to consider the motion for summary judgment unopposed.

## SUMMARY OF ARGUMENT

The Court of Appeals' reviews a district court's order regarding the disposition of motions under Rule 60(b) under an abuse of discretion. *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987).  To obtain relief from a judgment under Rule 60(b), a moving party must show that the motion was timely, that she has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside.  *Id.*

Here, the District Court abused its discretion when it granted Appellee's Motion to Strike Appellant's Opposition to Appellee's Motion for Summary Judgment and considering the motion unopposed.  The District Court failed to appropriately consider the personal responsibility of Appellant, the possibility of prejudice, and the availability <u>and imposition</u> of less drastic sanctions.  *See GNB, Inc. v. Tropex, Inc.*, 1988 U.S. App. LEXIS 19524 at 4-5 (4th Cir. 1988) (reversing the District Court of Maryland's denial of the defendants' motion to file an opposition to plaintiff's motion for summary judgement out of time).

Further, the District's Court's failure to consider Appellant's Opposition to Appellee's Motion for Summary Judgment did not constitute harmless error because the District Court's decision to not consider Appellant's Opposition could have "substantially swayed" the outcome of summary judgment.  *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999).

## STANDARD OF REVIEW

The Fourth Circuit has held that when a party fails to timely oppose a motion for summary judgment, "the effect of [a] district court's rulings, denying [the party's] motion to file their opposition out of time and granting [a] motion for summary judgment is to deny [the party] any opportunity to respond to the merits of the considerable claims []. This results in a termination of proceedings tantamount to a judgment by default against defendants."  *See GNB, Inc. v. Tropex, Inc.*, 1988

U.S. App. LEXIS 19524 at 4 (4th Cir. 1988).  The Fourth Circuit has long held and repeatedly expressed "a strong preference that default be avoided and that claims, and defenses be disposed of on their merits." *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.,* 616 F.3d 413, 417 (4th Cir. 2010).  As such, "justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings."  *See Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987).

In determining whether to set aside a default judgment or to deny a party an opportunity to respond to a dispositive motion, the district court must consider the factors from *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05, which are "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic."  *See McKesson Medical-Surgical, Inc. v. Flower Orthopedics Corp.*, 2018 U.S. Dist. LEXIS 26127 at 7-8 (E.D.V.A.) (citing *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006); *see also Lolatchy*, 816 F.2d at 953 *and United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982).

## **ARGUMENT**

## I. THE DISTRICT COURT ABUSED ITS DISCRETION IN CONSIDERING THE MOTION UNOPPOSED

### A. Appellant's counsel's miscalendaring of the deadline for an Opposition to Motion to Summary Judgment was not done in bad faith.

Appellant has put the utmost effort into litigating her claims and responding to Defendant's Motion for Summary Judgment. As articulated in Appellant's Combined Motion in Opposition to Defendant's Motion to Strike Appellant's Opposition to Defendant's Motion for Summary Judgment, specifically, counsel for Appellant (in good faith) incorrectly operated under the incorrect pretense that Appellant had 21-days to provide her Opposition to Defendant's Motion for Summary Judgement and not 14-days pursuant to the Maryland Local Rules. JA 491. As soon as the Appellee's Motion for Summary Judgment was filed, 9-minutes after notification of the filing, undersigned counsel sent correspondence to her Associate Attorney, requesting that she calendar a 21-day deadline on the firm calendar for June 2, 2022, and requested that she set an internal draft deadline for an initial draft of May 26, 2022. JA846. Here, this was not a scenario where an attorney forgot to calendar a deadline altogether, forgot that a pleading was due, or got "too busy" to comply with a deadline.

Appellant's Opposition and Exhibits were originally filed on June 2, 2022, the deadline upon which Appellant's counsel understood the response deadline to be.

11

As a result of formatting distortions of several of the filed exhibits which was only discovered after Appellant's exhibits were uploaded through ECF; as well as the inadvertent disclosures of attorney-work product documents that were unintentionally appended to a filed Exhibit document; and finally, the fact that a previously unredacted version of an Exhibit was attached to an Exhibit cover page that should have had the redacted version attached to it, Appellant's Opposition to Defendant's Motion for Summary Judgment *had* to be refiled on June 3, 2022 after the errors were corrected. This series of unfortunate events is also what necessitated Appellant's counsel filing a *Nunc Pro Tunc* Motion to Extend the Time to File Appellant's Opposition by one business day, in order to re-file Appellant's Memorandum and supporting exhibits. Furthermore, this is also why Appellant's counsel filed an Emergency Motion to Strike the overall submission and accompanying exhibits and why Appellant's counsel contacted the Court's Civil Clerk's Office to strike her previous filing from June 2, 2022, in order to remove these unintended produced documents from the public domain. Appellant's filing of a *Nunc Pro Tunc* motion for only one (1) day and not eight (8) days exemplifies and corroborates Appellant's belief that her Opposition was due on June 2, 2022, and not May 26, 2022.  Further, had Appellant believed that May 26, 2022, was the date the Opposition was due, Appellant would have moved for an extension of time given the extremely lengthy nature of Appellee's 76-page Motion for Summary Judgement

based on the time she would have needed to adequately respond to it. Given that Appellant's Opposition was reasonably believed to be due on June 2, 2022, Appellant did not file for an extension of time because she was operating under the belief that she did not need one.

Furthermore, Appellant's counsel was not the only party under the belief that June 2, 2022, was the deadline for Appellant's Opposition. Appellee's counsel was operating under the same assumption. On June 2, 2022, counsel for both parties had been in contact regarding a potential exhibit in Appellant's opposition that was just provided to counsel, and the day before had been in contact concerning Appellant's request for Appellee's consent to file excess pages for Appellant's Opposition filing. *See*, JA488. Appellee consented to Appellant's request and at no point did Appellee give any indication—actual or perceived—that Appellant's Opposition was untimely. Thus, it seems obvious that Appellee was also operating under the belief that Appellant's Opposition was due June 2, 2022.

Appellant's counsel acknowledges that Appellee's counsel was not responsible for Appellant's missed deadline, however, only wishes show that the missed deadline was not done in bad faith or for any dilatory manner as it was a shared mistaken belief. Appellant's counsel did everything in her power to rectify her mistake and Appellant should not have been deprived of her opportunity to be judged on the merits of her case.

**B. Striking Appellant's Opposition to FCPS' Motion for Summary Judgment deprives Appellant of the opportunity to have judgment determined on the merits of her case and is tantamount to a judgment by default.**

In the present case, Appellant failed to timely oppose Appellee's motion for summary judgment. As discussed in *GNB, Inc. v. Tropex, Inc.*, "the effect of [a] district court's rulings, denying [a party's] motion to file their opposition out of time and granting [the] motion for summary judgment, is to deny [the party] any opportunity to respond to the merits. . . result[ing] in a termination of proceedings tantamount to a judgment by default. . . " *See GNB, Inc. v. Tropex, Inc.*, 1988 U.S. App. LEXIS 19524 at *4 (4th Cir. 1988).

In *GNB,* GNB filed suit against Best-West in the United States District Court for the District of Maryland alleging default in payments due under the agreement. GNB filed a third amended complaint on January 22, 1987, and a motion for partial summary judgment against Tropex, Best Battery, Arthur Best, and Roland Best on February 25, 1987. When no timely opposition to the motion was filed by defendants, the district court granted the motion on March 20, 1987. *See Id.* at *2. On March 27, 1987, defendants moved the district court to alter or amend the judgment, but the court denied defendant's motion on April 3, 1987, holding that Rule 6(b)(2) controls the procedure for submitting motions out of time. *See Id.* at *2-3. Defendants then moved to be allowed to file an opposition to plaintiff's motion for partial summary judgment out of time on April 21, 1986. The district court

denied defendants' motion on June 1, 1987, and entered a final judgment that defendants appealed. *See Id.* at *3.

Upon review this Court determined that denial of the defendants' ability to file an opposition was equivalent to a default judgment and as such the precedents that dealt with motions to set aside default judgments applied, namely *Lolatchy* and *Moradi*, because "justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." *See GNB, Inc. v. Tropex, Inc.*, 1988 U.S. App. LEXIS 19524 at *4 (4th Cir. 1988). Due to the district court's failure to make a finding that defendants, and not their counsel were responsible for the failure to file the opposition to the summary judgment motion, the district court's failure to address alternative sanctions, including attorney fees, as well as the defendants prompt seeking of relief, this Court reversed the district court's decision and ordered that the defendants be allowed to file an opposition to the plaintiff's motion for summary judgment.

This Court held that in determining a Rule 60(b) motion, the district court must consider the *Payne* factors governing default judgment including "the personal responsibility of the party, the possibility of prejudice, whether there was a history of dilatory action, any delay in seeking relief, and the availability of less drastic sanctions." *Id.* at *4-5 (citing *Lolatchy v. Arthur Murray, Inc.,* 816 F. 2d 951, 953 (4th Cir. 1987) and *United States v. Moradi,* 673 F.2d 725, 728 (4th Cir. 1982)).

In the present case, Appellee moved for summary judgment on May 12, 2022. Due to a scheduling error, Appellant's counsel was under the belief that the Opposition was due on June 2, 2022. In reality, Appellant's Opposition had been due on May 26, 2022, but Appellant's counsel was unaware. As a result of incorrect uploading of files, Appellant's Opposition to Appellee's Motion for Summary Judgment was filed on June 3, 2022, and was accompanied by a "Motion for Leave to Refile Appellant's Motion One Day Out of Time, *Nunc Pro Tunc*, to June 2, 2022." On June 7, 2022, Appellee moved to strike Appellant's Opposition on the grounds that it was untimely because it had been filed eight (8) days out of time. The District Court granted the motion to strike on June 29, 2022, and held that it would consider Appellee's Motion for Summary Judgment unopposed. The District Court also awarded Appellee attorney's fees for the motion to strike and oral argument. On July 14, 2022, Appellant timely moved for Reconsideration of the Court's granting of Appellee's motion to strike. The District Court denied Appellant's Motion for Reconsideration on September 6, 2022. On January 12, 2023, the District Court granted Appellee's motion for summary judgment and the case was closed. For the reasons enumerated in Section C, the factors enumerated in *GNB*, *Lolatchy*, and *Moradi* weigh in favor of allowing Appellant to respond to FCPS' Motion for Summary Judgment.

**C. The *Payne* factors enumerated in *GNB*, *Lolatchy*, and *Moradi* weigh in favor of allowing Appellant to respond to FCPS' Motion for Summary Judgment.**

*1. Meritorious Defense*

Showing the existence of a meritorious defense only "requires a proffer of evidence which would permit a finding for the defaulting party, or which would establish a valid counterclaim." *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). A party need only present or proffer "specific" evidence that, "if believed, would permit either the Court or the jury to find for the defaulting party." *See Moradi*, 673 F.2d at 727; *see also Augusta Fiberglass*, 843 F.2d at 812 (holding that "the underlying concern is. . . whether there is <u>some possibility</u> that the outcome. . . after a full trial will be contrary to the result achieved by the default." Importantly, the Court in *GNB, Inc.* did not name this factor when determining whether a district court abused its discretion in denying a party the opportunity to respond to a motion for summary judgment out of time. *See GNB, Inc.*, 1988 U.S. App. LEXIS 19524 at 4-5 (stating that "in determining whether to set aside the judgment, the district court must consider the personal responsibility of the party, the possibility of prejudice, whether there was a history of dilatory action, any delay in seeking relief, and the availability of less drastic sanctions.")

Regardless, in the present case, the Appellant submitted an Opposition for consideration that spanned over fifty (50) pages of written argument with over twenty (20) supporting exhibits in which she rebutted with specificity Appellee's claims that no issues of genuine material fact exist. If Appellant's claims are believed, there is "some possibility" that the District Court or a jury could find in favor of Appellant. As such, Appellant's Opposition meets the standard for a "meritorious defense" under the *Payne* factors and this first factor weighs in favor of allowing Appellant to have her defense against Appellee's Motion for Summary Judgment considered by the District Court.

## 2. *Reasonable Promptness*

When seeking to set aside an entry of default, or, in the present case, a denial of the ability to oppose summary judgment, "whether a party has taken 'reasonably prompt' action. . . must be gauged in light of the facts and circumstances of each [case]." *Moradi*, 673 F.2d at 727. District Courts in the Fourth Circuit have found that a party acted "reasonably promptly when waiting seventeen, twenty-one, and thirty-two days. . ." *See Burton v. TJX Cos.*, 2008 U.S. Dist. LEXIS 35839 (E.D.V.A.) at 3. Furthermore, the Local Rules for the District Court state that "any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order." Local Rule 105.10. On June 30, 2022, the District Court issued its Order, therefore, Appellant timely filed her

Motion for Reconsideration no later than fourteen days since the Court's Order (JA839) Denying Appellant's Motion for Leave to Refile Appellant's Opposition to Appellee's Motion for Summary Judgment (JA757), and its overall determination to not consider Appellant's Motion in Opposition and Memorandum of Law in Opposition to Appellee's Motion for Summary Judgment (JA491). Appellant's Motion was well within the time limits considered "reasonably prompt" by the Fourth Circuit. As such, this factor weighs in Appellant's favor.

### 3. *Personal Responsibility*

Perhaps the most critical favor in many of the cases above as well as the present case, is whether the defaulting party, Appellant herself, was "ultimately responsible" for the failure to respond. *McKesson Medical*, 2018 U.S. Dist. LEXIS 26127 at 17. This requires courts to "distinguish between the fault of the attorney and the fault, if any, of the party itself." *Id.* (citing *Augusta Fiberglass*, 843 F.2d at 811). The Fourth Circuit has long held that "justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." *Moradi*, 673 F.2d at 728. Further, courts in the Fourth Circuit have consistently found that defaulting parties were not personally responsible for defaults that were attributable to their attorneys or agents. *McKesson Medical*, 2018 U.S. Dist. LEXIS 26127 at 17 (citing *Colleton Preparatory Acad.*, 616 F.3d at 419-20 (defendant's agent received summons and

19

complaint but forwarded to third party instead of defendant); *Augusta Fiberglass*, 843 F.2d at 811-12 (defendant's attorney was served with amended complaint but never sent it to defendant); *Lolatchy*, 816 F.2d at 952-53 (default followed repeated failure of defendants' attorney to respond to plaintiff's discovery requests); *Moradi*, 673 F.2d at 727-28 (default occurred because, after defendant retained counsel, attorney failed to obtain local counsel to submit pleadings)).

Similar to the facts in *GNB, Inc.*, the District Court made no finding that Appellant herself was responsible for the failure to file the Opposition to the Appellee's Summary Judgment Motion. *See GNB, Inc.*, 1988 U.S. App. LEXIS 19524 at 5. The District Court, like the court in *GNB, Inc.*, found that counsel's arguments did not rise to level of excusable neglect and thus the neglect was not excusable. *Id.* Here, in this case, Appellant is blameless and the distinction between her actions and that of her counsel is "critical." *McKesson Medical*, 2018 U.S. Dist. LEXIS 26127 at 20. It was counsel's mistake, not Appellant's, that led to the District Court's denial of Appellant's opportunity to be heard, and as such Appellant should not be punished for her counsel's mistake. *Moradi*, 673 F.2d at 728. Moreover, even if Appellant could be considered personally responsible, courts should not "place [] overarching emphasis on a single *Payne* factor." *See Colleton Preparatory Acad.*, 616 F.3d at 419-21. Here the District Court did not hold

Appellant personally responsible for the delay nor did Appellee allege that Appellant was personally responsible. Accordingly, this factor weighs in favor of Appellant.

### 4. History of Dilatory Action

In conjunction with the above factor, a Court must consider whether a defaulting party has engaged in delays prior to the entry of default and whether these delays are attributable to the party or their attorney. *McKesson Medical*, 2018 U.S. Dist. LEXIS 26127 at 21; *see also Lolatchy*, 816 F.2d at 953. However, even when a district court has determined that a party's counsel has shown a "continuous disregard of court rules and orders," unless the court also determines that the party itself was personally responsible for the delay, justice requires that a default judgment be set aside. *See Lolatchy*, 816 F.2d at 953; *see also GNB, Inc.*, 1988 U.S. App. LEXIS 19524 at 5. While "frustration" due to delay "may be sufficient reason for sanctions. . [it] should not suffice as a reason for depriving [a party] of their day in court." *Id.* at 954.

Given the District Court's emphasis on Appellant's counsel's delays throughout this matter, namely with Appellant's failure to respond to Appellee's Motion to Compel and Joint Status Report, Appellant's counsel would like to address the District Court's concerns. On February 3, 2022, Appellee's counsel filed a Motion to Compel Appellant's discovery. JA888. On February 4, 2022, Appellant's counsel responded to Appellee's counsel's February 1, 2022, email

concerning a January 17, 2022, discovery deficiency letter and advised about the tragic personal circumstances and medical condition that Appellant's counsel was contending with. JA888. Appellant's counsel acknowledged that a Motion to Compel was filed and asserted to Ms. Kozik, *"We are certainly not trying to withhold anything or not be responsive. Given my personal circumstances, I do believe I will need to request an enlargement of time for the completion of discovery and would like your consent to do so*," which was consented to. J A888. In response, Ms. Kozik also indicated, "*With regard to the motion to compel, we will withdraw our motion to compel if and when you fully comply with our requests---including both the written responses and the missing production*." JA888. At that point, considering there was no prior or present intention to <u>not</u> provide any of the outstanding discovery to Appellee, and Appellee had represented that they would withdraw the Motion to Compel once documents were received, there was no basis for Appellant's counsel to bill the Appellant to draft an opposition to Appellee's Motion to Compel—there was nothing to oppose. At that point, parties were working through the dispute and the information that was not previously received. On June 30, 2022, the Court highlighted the fact that an Opposition to the Appellee's Motion to Compel was not filed, but for Appellant's counsel, there was a legitimate basis for not filing one.

On March 1, 2022, Appellant with the consent of Appellee, filed a Motion for Extension of Discovery Deadlines by 30-Days. In that Motion, Appellant's counsel articulated the circumstances behind the need for the extension, acknowledging that a Motion to Compel was filed, and articulated a summary of the difficult life circumstances—including a family death and accompanying grief—and a personal medical condition that Appellant's counsel was contending with. In the filing, Appellant's counsel also acknowledged that Bates Stamped discovery of previously sent production still needed to be sent to Appellee. On March 2, 2022, Appellant's Motion for Extension of Time was granted. By April 7, 2022, all discovery deficiencies were cured, and Appellee was in possession of Bates stamped discovery.  JA892, JA899, JA908.

At the June 30, 2022, Motions Hearing, Appellee's counsel, and the District Court pointed out that Appellant's counsel did not respond to the Proposed Joint Status Report pursuant to the Scheduling Order, which caused Appellee to have to file its own individual Status Report.  However, Appellee's counsel was well-aware that Appellant's counsel was going to be out of the office on travel from April 12, 2022, through April 18, 2022.  JA868, JA869, JA870.  Considering the context of the exchanges between counsel, this was not a full or accurate representation as to why the Appellee was filing a single Status Report instead of the Joint Status Report that Appellant's counsel had later given the "ok" for on the same day after she got

off a plane. *Id.* Since this was raised at the Motions Hearing as though Appellant's counsel was somehow seemingly being derelict in her responses, it is important that the Court have a fuller understanding of the circumstances that took place.

At no point did any of the discovery delays, prejudice Appellee in any way and there is no willful pattern or history of delays or dilatory action by Appellant's counsel under the *Payne* factors, especially given that the only actual missed filing of record with the Court is that of the status report which has been explained above. *See McKesson Medical*, 2018 U.S. Dist. LEXIS 26127 at 21. Despite the above, however, the issue remains that the actions and mistakes were accountable to Appellant's counsel alone and not attributable to the Appellant directly. Therefore, Appellant should not have been denied her day in court or her opportunity to be heard because of counsel's mistakes, and thus this factor weighs in favor of allowing Appellant the opportunity to defend herself against Appellee's Motion for Summary Judgement.

### 5. *Prejudice to the Appellee*

When determining prejudice to the non-defaulting party, courts examine whether the delay: (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud.

*See McKesson Medical*, 2018 U.S. Dist. LEXIS 26127 at 21-2 (citing *Lolatchy*, 816 F.2d at 952-53.)  Courts give the most weight to the first two factors.  *Id.*

By Appellee's own admissions during the hearing on June 29, 2022, there would be no prejudice to Appellee once certain exhibits were struck from the record per its Motion to Strike Exhibits.  The Court granted Appellee's Motion to Strike and thus no prejudice remained.  JA839.  The delay had not made it impossible for Appellee to present some of its evidence and Appellee was in fact the only party in this matter that had the opportunity to present evidence in its favor.  Secondly, Appellee did not demonstrate that it would be prejudiced by letting this case proceed on the merits.  Thirdly, discovery had been completed and any discovery issues that remained were rendered moot upon the Court's granting of Appellee's Motion to Strike Exhibits.  Finally, the District Court expressly stated that it did not find Appellant's actions or delay to be done in bad faith.  The miscalendaring of the deadline was inadvertent and was not used by Appellant to collude or commit a fraud.

In contrast, Appellant was forced have her claims be subject to summary judgment without the opportunity to defend her claims because the striking of her Opposition rendered Appellee's Motion unopposed.  As a result, Appellant was subjected to financial liability and a tarnished reputation at the hands of Appellee.  As stated by the Court in *GNB, Inc.*, "the effect of such a judgment may be

devastating." There was no discernable prejudice remaining against Appellee if Appellant had been allowed to file an Opposition to Appellee's Motion for Summary Judgment and instead, Appellant was set to suffer irreparable harm. Accordingly, this factor weighs in favor of Appellant.

6.   *Availability of Lesser Sanctions*

The final factor a court must determine is the availability of lesser sanctions. As explained by the Court in *McKesson Medical*, courts have "commonly imposed alternative monetary sanctions on attorneys who are responsible for a party's default." *See McKesson Medical*, 2018 U.S. Dist. LEXIS 26127 at 21-2; *see also GNB, Inc.*, 1988 U.S. App. LEXIS 19524 at 2 *and Lolatchy*, 816 F.2d at 953 (stressing that "no sanctions short of default were attempted by the district court"). Even when neither party has identified lesser sanctions or the district court did not address the possibility of alternative sanctions, lesser sanctions "undoubtedly exist." *Id.* The Court in *GNB, Inc.*, states that "the most obvious" sanction for a delay in failing to timely oppose a party's motion for summary judgment "would have been the imposition of the costs of the delay, including attorney fees." *See GNB, Inc.*, 1988 U.S. App. LEXIS 19524 at 6.

Importantly, the District Court did impose such sanctions. Appellant was ordered to pay the costs of the delay including attorneys' fees incurred in connection with drafting the Emergency Motion to Strike and the Motion to Strike Appellant's

Opposition (JA762), as well as preparation for oral argument and appearance at the hearing on June 29, 2022. Despite this already severe sanction, Appellant was also subjected to the denial of an opportunity to oppose Appellee's Motion for Summary Judgment. Here Appellant has not only been subjected to less severe sanctions, but she is punished doubly over by also being subjected to the most severe sanction of denial of the opportunity to present her meritorious defense to Appellee's Motion for Summary Judgment. Given the availability and imposition of sanctions other than the denial of the opportunity to present her case, this factor weights in Appellant's favor.

## II.    THE DISTRICT COURT'S DENIAL OF CONSIDERATION OF APPELLANT'S OPPOSITION DOES NOT CONSTITUTE "HARMLESS ERROR" AS APPELLANT PROVIDED SUFFICIENT EVIDENCE TO ESTABLISH THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT THAT REMAINED

### A. The District Court's Decision to Not Consider Appellant's Opposition to Appellee's Motion for Summary Judgment Did Not Constitute "Harmless Error".

The harmless error statute "applies directly to appellate courts" and requires the court to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999); *see also McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). To conclude that a district court's errors were "harmless," the court need only say "with fair assurance,

after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors." *Id.* (citing *Kotteakos v. United States,* 328 U.S. 750, 765 (1946)); *see also Lufti v. United States*, 527 Fed. Appx. 236, 242 (4th Cir. 2013).

When reviewing the district court's grant of summary judgment, the appellate court reviews the ruling *de novo*. Summary judgement is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party carries the initial burden to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets this burden, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Here, Appellant was not granted the opportunity to "set forth specific facts showing that there is a genuine issue for trial" at all. *Id.* The District Court's decision to strike Appellant's Opposition deprived Appellant of the ability to rebut the moving party's assertion of the absence of genuine issue for trial. Even with the requirement that the court views "all facts and reasonable inferences in a light most favorable to the nonmoving party," without the Appellant's ability to formulate and specify the genuine issues of fact and the evidence that supports her claims, the

Appellant was denied the opportunity to go beyond the pleadings.  *See Lufti v. United States*, 527 Fed. Appx. 236, 242 (4th Cir. 2013).

As stated above, the Appellant submitted an Opposition for consideration that spanned over fifty (50) pages of written argument with over twenty (20) supporting exhibits in which she rebutted with specificity, Appellee's claims that no issues of genuine material fact exist.  If Appellant's claims are believed, there is "some possibility" that the District Court or a jury could find in favor of Appellant.  As such, the District Court's decision to not consider Appellant's Opposition could have "substantially swayed" the outcome of summary judgment.  As enumerated below, Appellant provided sufficient evidence that there were genuine issues of fact that remained.

**B. Appellant Provided Sufficient Evidence to Establish That There Were Genuine Issues of Material Fact That Remained.**

*1. Appellant timely filed her Complaint and as such has exhausted her administrative remedies.*

As a preliminary matter, under Title VII, a Maryland employee must file a charge of discrimination within 300 days after the last "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).  Appellee claimed that Appellant's EEOC charge is partly time-barred because Appellant failed to file an EEOC charge on the "new factual incidents," thus had failed to exhaust her administrative remedies, and is past the statute of limitations.  JA125-127.

However, Appellee's argument hinged on its allegation that Appellant's Complaint is full of "discrete discriminatory acts outside of the 300-day limitations period." JA126. Further, Appellee alleged that due to Appellant's failure to check the continuing violation box, all acts preceding Plaintiff's termination are time-barred. However, all of Appellant's allegations are related to her filed EEOC Charge of Discrimination precisely because the acts Appellant alleges are a part of a pattern of disparate treatment, harassment, and retaliation, which resulted in a hostile work environment based on her race and sex, and because of her engagement in statutorily protected activity. As clearly denoted on her EEOC Charge, Appellant asserts that the period of discrimination ranges from January 19, 2018, through February 18, 2020, and covers the basis of race and sex discrimination, retaliation, and hostile work environment. JA710. As such, Appellant claims are not time-barred and are in fact subject to the continuing violation doctrine. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Importantly, it should be noted that the Motion for Summary Judgment was the first time Appellee raised the issue of timeliness and exhaustion of remedies—even though Appellee filed a Motion to Dismiss, which was subsequently opposed by Appellant and ultimately denied by the Court. At no point before its Motion for Summary Judgement had Appellee claimed that Appellant's allegations of race and sex discrimination were not properly before this Court or the EEOC. The Supreme

Court has unanimously held that Title VII's charge-filing precondition is <u>not</u> jurisdictional and <u>cannot</u> be raised at any stage of a proceeding. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019). In fact, the Court states that "prerequisites to suit like Title VII's charge-filing instruction are. . .among the array of claim-processing rules that must be timely raised to come into play." *Id*. Like the present case, in *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019), the City of Fort Bend did not raise the issue of the District Court's lack of jurisdiction until years into litigation. *Id*. at 1848. There the Court made it clear that while Title VII's charge-filing requirement is a "mandatory one," it does not have a jurisdictional characterization and thus is subject to forfeiture. *Id.* at 1851. Here, Appellant forfeited that argument.

At the writing of the Motion for Summary Judgment, over two (2) years have passed since Appellant filed her EEOC charge. JA710. Further, over one (1) year had passed since Appellant filed her Complaint. JA10. In that span of time, at no point did Appellee raise the issue of timeliness or exhaustion of remedies. Appellee had gone so far as to file a Motion to Dismiss almost one (1) year ago and at no point did it raise the issue of subject-matter jurisdiction in that filing, either. As the Court in *Fort Bend* states, "Defendants, after all, have good reason promptly to raise an objection that may rid them of the lawsuit filed against them." *Fort Bend*, 139 S. Ct. at 1851. Here, Appellee failed to do so. By this point, Appellee had participated

in the EEOC process, filed a Motion to Dismiss, answered the Complaint, participated in a settlement conference, and participated in Discovery only to _now_ claim that the Court lacks subject-matter jurisdiction over Appellant's allegations of discrimination in relation to the Linganore and Walkersville incidents as well as the Co-Player of the Year Facebook Post.  Appellee has had ample time to narrow Appellant's claims and failed to do so.  It should not now get to avail itself of the argument years into the litigation of these claims.  Appellee failed to raise this issue in a timely manner and as such, pursuant to the Supreme Court's holding in _Fort Bend_, Appellee forfeited this argument.

>    2. _FCPS's Reasons for Terminating Appellant are Pretextual._

Once a plaintiff has established her _prima facie_ case of discrimination, the burden of production and persuasion shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its action. _McDonnell Douglas,_ 411 U.S. at 802. If the defendant is successful, the plaintiff must demonstrate, by a preponderance of the evidence, that the defendant articulated reason is a pretext for discrimination. _Id._ at 804.  The Appellee has justified its termination of Appellant and prior disciplinary actions regarding the Linganore and Walkersville incidents stating that Appellant's actions and behavior violated FCPS policy. Appellant's suspension after the social media post regarding Co-Player of the Year was similarly justified as being claimed to be a violation of FCPS policy.

*Departure of Players*

Appellee argued that the series of events that led to Appellant's termination began with FCPS' investigation into the departure of five (5) varsity players quit the FHS basketball team and alleged that Appellant was "emotionally abusive." JA118. However, that is not the reason offered in Appellant's termination letter— the audio recording is. Nevertheless, in support of its claims, Appellee provided the various testimonies of school officials and the members of the team who alleged the abuse. *Id*. at 19.  Appellee essentially claimed that because school officials and the members of the team that quit claim otherwise, Appellant had no evidence that Appellee actions were discriminatory.  However, various members of Appellant's team as well as their parents provided statements in which they undoubtedly counter and refute Appellee's allegation. JA721. Further, these members of the FCPS community allege and support Appellant's contention that Appellee's targeting of Appellant occurred in retaliation for her advocacy regarding the Linganore incident. One parent of a team member states that "after the Linganore incident FCPS seemed to have placed a target on [Plaintiff's] back."  See, *Id.*  Further, it is Appellant's contention that because it was hard for these players and their parents to accept the fact that they did not possess the level of talent necessary to play at a D1 level, these players and their families chose to target Appellant's out of resentment that they would not be able to achieve the same level of success that other former players

would.  At no point, did Appellee address, acknowledge, or refute this assertion. With Appellee's submitted declarations, it is essentially asking the District Court to afford greater weight to its own witnesses' testimony, versus the testimony of Appellant or those assertions provided in her letters of support, but that conflict of evidence should have been for a jury to determine. Moreover, it is also a genuine issue of material in fact in dispute as to whether five of the Frederick High School Girls' Varsity Basketball Team members legitimately quit the team because of Appellant's basketball coaching style and if she was mischaracterized as "emotionally abusive" for requiring her Student-Athletes to be disciplined and focused on their craft. JA151 *contra* JA721.  Additionally, it is also a genuine issue of material fact in dispute whether five of the Frederick High School Girls' Varsity Basketball Team members quitting is relevant to this case or the allegations contained herein, considering FCPS's proffered reason for terminating Appellant is because of the unsubstantiated audio recording where she has been attributed to saying "F*ck White People," and not for any other reason, including any unsubstantiated findings of being "mentally abusive" as a Coach. JA118.

*Termination*

Appellee further asserted that Appellant was terminated due to an audio recording where she is being accused of saying "F**k White People" ("FWP"). JA121.  In its Motion, Appellee acknowledged that the audio was supposedly

uncovered while it was "conducting its investigation into the five varsity players," even though Appellee had previously advised Appellant that the audio recording was sent to school officials anonymously. *Id.* In fact, whether Appellant being terminated for FCPS's purported reason of "conduct" is a pretextual justification for FCPS's discrimination and retaliation against Appellant, is a genuine issue of material fact in dispute. While Appellee provides its own set of Declarants and a Report from an Expert witness, Appellee asked the District Court to assume the role of the trier of fact in place of a jury, concerning the veracity and credibility of these proffered individuals and their accompanying Exhibits. Appellee also heavily relied on the alleged audio recording that it attributes to Appellant as the justification for her termination. Even that creates genuine issues of material fact in dispute—whether a jury would find that the recording is authentic; whether a jury would find that this audio recording was the actual motive for Appellant's termination and not her protected characteristics or known engagement in statutorily-protected activity; and whether independent evidence exists to support that this audio is rightfully attributed to Appellant, as Appellee claims. By Appellee's own admission, when they questioned students about the audio the students stated that they did not recall whether or not Plaintiff had made the statement. JA122. Appellee then weakly ties a student's statement that Appellant had previously used the word "f**k" to their "earlier investigation." *Id*. However,

Appellant conveniently leaves out that fact that this was the very same investigation in which they found no substantiated evidence of abuse.  JA25, ¶ 50.  At this point, the only "proof" that Appellee has that the recording is of Appellant is the statements of FCPS leadership that it "sounds like" Appellant and the testimony of an expert that should be presented before a jury.

Additionally, whether Appellant made the statement "F*ck White people" during a meeting with Student-Athletes even though there is no evidence that any person that supposedly attended this meeting can recount that the statement was made and Appellant herself has always maintained that she does not recall making the alleged statement, is in and of itself a major genuine issue of material fact in dispute. JA121. Along that same line of reasoning, since it is Appellant's argument that the audio was illegally recorded anyway, there is also a dispute of fact about whether the illegally recorded audio statement can be used as evidence to support FCPS's purported reason for terminating Appellant. *Id.*

Finally, indeed, since credibility is an issue here, Appellant should not be deprived of the opportunity to challenge and test the veracity of the Appellee's alleged claims  and unsupported contentions through a jury trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding that summary judgment "by no means authorizes trial on affidavits. . . credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge."); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (stating that a court cannot weigh evidence of make credibility determinations) (citing Fed. R. Civ. R. 56 Advisory Committee's Note (1963) ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgement is not appropriate.").

### 3. Appellant was Subjected to Various Other Adverse Actions Beyond Termination

While Appellee attempted to isolate Appellant's adverse employment actions to her termination, the adverse employment actions in this case included being counseled; suspension from a game; being issued a letter of reprimand; being subjected to trainings and treatment that a similarly situated White female Basketball coach was not subjected to; and being threatened with adverse actions. *See generally* JA10.  Over time, as Appellant became more of an outspoken advocate against racism, discrimination, and the prejudicial treatment of she and her student-athletes, the Appellee seemingly became strategically focused on ousting Appellant from her position, which resulted in various allegations lodged against her over the course of her career in pursuit of that objective.

Despite Appellee's claims about the existence of its discrimination and anti-retaliation policies, Appellant was regularly subjected to discriminatory and racist behavior as a result of Appellee's inability to implement anti-racist policies for their

employees and students of color, more specifically African Americans. This argument in and of itself is a genuine issue of material fact that is in clear dispute—whether Appellant can impute liability to Appellee for the conduct and actions of third parties that were in the dominion and control of Appellee. *See* JA151 *contra* JA593. Similarly, it is also an issue in dispute as to whether Appellee implemented and exercised reasonable measures that were calculated to end any perceived harassment by third parties within Appellee's dominion and control. *See* JA151 *contra* JA593, JA712, JA715.

In response to the Linganore Game incident, Appellant was subjected to harsher disciplinary action, including behavioral meetings and evaluations than her white counterpart, Ms. Easterday. JA14-18, ¶ 22-9. Accordingly, there are genuine issues of material fact in dispute concerning whether Appellee took appropriate remedial acts after the hostile and abusive incident that occurred during the Linganore Game. JA107 *contra* JA586, JA595, JA606, JA612, JA715. Additionally, there are genuine issues of material fact in dispute concerning whether FCPS equitably addressed Coach Easterday's behavior after the Linganore Game and whether Coach Easterday was reprimanded at all after the events that occurred. *Id.* In light of the above, one of the obvious genuine issues of fact is whether Appellant was retaliated against after reporting the racists and sexist treatment she and her student-athletes experienced at the Linganore Game.

Then, after, the Walkersville incident in which Appellant was accused of calling a referee "racist," Appellant attended a meeting with Mr. Franceschina to discuss this incident in further detail. Mr. Franceschina concluded that meeting by issuing a Letter of Reprimand to the Plaintiff which condemned her for the actions she took at the game. Therefore, whether Appellant was appropriately issued a Letter of Concern after a referee falsely accused her of calling him "racist" after she pointed out his differential treatment of the student-players on the Frederick High School team—who are largely African American—versus his treatment of the Walkersville High School Team—which is composed of primarily, if not all, White student-players, is another genuine issue of material fact in dispute. JA113 *contra* JA595, JA712.

Given, Appellee's argument concerning Appellant's alleged authorship of an April 15, 2019 Facebook post, whether Appellant was discriminately targeted for being the author of a Facebook post on the "FGB Power" page even though there were two known administrators linked to the FGB Power Facebook page and despite the fact that Coach of the other Co-Player of the year wrote a similar post on her personal Facebook page, is a genuine issue of material fact in dispute. JA114 *contra* JA597. And despite Appellee's assertions and implications to the contrary, there is a genuine issue of material fact in dispute as to whether the FGB Power "Co-Player of the Year" Facebook post regarding a news article published by the

Frederick news Post violated FCPS regulation 100-08 (section C) to begin with. JA114 *contra* JA599, JA606.

Finally, there is a clear dispute concerning whether Appellant was an at-will employee or whether she had an expectation of employment with an implied employment contract. Specifically, whether FCPS's argument that Appellant was an at-will employee is discredited by the fact that technically her seasonal coaching contract had concluded at the time she posted on the FGB Power Facebook page on April 15, 2019, but she was not reprimanded and advised that she would be "suspended for the first game of the 2020 basketball season" until June 4, 2019, and her suspension would not be served until December 5, 2019—even though she did not formally sign her FCPS Assignment-Acknowledgment of Additional Pay-Coach Agreement until September 26, 2019. JA114 *contra* JA552, JA597, JA612.

For these reasons, Appellant has shown, by preponderant evidence, that the Appellee's articulated reasons were pretextual and the real reason for the Appellee's actions were because of her race/sex and/or in retaliation for her statutorily protected EEO activity. *See McDonnell Douglas,* 411 U.S. at 804. As set forth above, the Appellee does not have factual support or any documented support for many of its contentions. As the questions of credibility, motive, and/or intent go directly to essential elements of Appellant's case, it is not appropriate to weigh these credibility issues outside a trial. *Anderson*, 477 U.S. at 255.

### 4. Appellee Retaliated Against Appellant for Her Advocacy Against Racial Discrimination and Appellee's Reasons for Its Actions Are Pretextual.

Appellant makes it clear in her Complaint that she engaged in protected activity when she spoke out against Appellee's lack of action after the racial incident at Linganore and pushed back against her own treatment compared to that of Coach Easterday. It has been settled by the Supreme Court that retaliation need not follow a formal EEO or EEOC complaint, in fact, informal "opposition" to discriminatory conduct or harassment constitutes protected activity which an individual may not be retaliated for. *See Crawford v. Metro. Gov't of Nashville & Davison County,* 555 U.S. 271, 276 (2009). Given the above, Appellant did engage in protected activity when she complained about Defendant's inaction and her disparate treatment after the Linganore game in 2018. Further, this was not the only incident of protected activity. Appellant continuously spoke out against the disparate treatment of she and her team in incidents such as the Walkersville game and the Co-Player of the Year post. Appellant's termination seemed to materialize after more than a year of retaliatory targeting of Appellant's that began after Appellant's advocacy against racial injustice after the Linganore game. As such, Appellee is incorrect in asserting that the only protected activity that Appellant engaged in was in December 2019 and is based on their invalid claim that the only adverse employment action was Appellant's termination. JA142-143. *But for* Appellant's advocacy against Appellee's disparate treatment, she likely would not

have been subjected to such intense scrutiny. The statutory anti-retaliation provisions prohibit any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter a *reasonable* employee from engaging in protected activity. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 56 (2006). All of Appellee's actions and their progressive severity were aimed at deterring Appellant from continuing to speak out against Appellee disparate treatment and inaction in the face of the racially hostile environment within FCPS.

Considering Appellee's argument that litigation should only be limited to Appellant's termination, it seemingly failed to provide any legitimate, non-discriminatory justification for all the other allegations of adverse employment actions that Appellant was subjected to. Appellant, students, and the families of students submitted testimony as to the targeted nature of Appellee's actions as motivated by race, sex, and retaliation. Further, they rebutted Appellee's implication that Plaintiff was fired because she abused or in any way conducted herself inappropriately with her students. There is a clear genuine issue of fact and credibility at issue with Appellant's retaliation claim and thus Appellee's Motion for Summary Judgement should have been denied.

## **CONCLUSION**

Wherefore, for the reasons stated above, Appellant, Ashley Bush, respectfully requests that this Honorable Court reverse the trial court's judgment striking

Appellant's Opposition to Appellee's Motion for Summary Judgment and remand this case for further proceedings and trial on the merits.

## **REQUEST FOR ORAL ARGUMENT**

Appellant respectfully requests oral argument. Appellant believes that her case involves a legal issue concerning public interest. A Motion for Summary Judgment is sought by defendants in the majority of race and national origin discrimination cases. The Fourth Circuit has held that when a party fails to timely oppose a motion for summary judgment, "the effect of [a] district court's rulings, denying [the party's] motion to file their opposition out of time and granting [a] motion for summary judgment is to deny [the party] any opportunity to respond to the merits of the considerable claims". This results in a termination of proceedings tantamount to a judgment by default against defendants." *See GNB, Inc. v. Tropex, Inc.*, 1988 U.S. App. LEXIS 19524 at 4 (4th Cir. 1988).

However, the task of determining whether a party should be allowed to file an opposition for a Motion for Summary Judgment requires guidance from the Court.

For that reason, Appellant believes that oral argument would be helpful in this case.

Respectfully submitted,

By:

Dionna Maria Lewis, Esq.

/s/ Jessica M. Ochoa_____
Jessica M. Ochoa
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C. 20003
Tel. (202) 486-3478 |
Dionna@DistrictLegalGroup.com
Associate@DistrictLegalGroup.com
*Counsel for Plaintiff-Appellant*

Date: April 18, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains approximately 9,762 words, excluding the part of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

2.  This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a mono-spaced type face using Microsoft Word in 14 Times New Roman.

Respectfully submitted,

By:  _Dionna Maria Lewis_

Dionna Maria Lewis, Esq.

s/  Jessica M. Ochoa
Jessica M. Ochoa
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C. 20003
Tel.  (202) 486-3478 |
Dionna@DistrictLegalGroup.com
Associate@DistrictLegalGroup.com
*Counsel for Plaintiff-Appellant*

Date: April 18, 2023